## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EUGENE MOROZOV and MEM CONSULTING INC., | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:18-cv-03421-GBD |
| | ) |
| | ) |
| ICOBOX HUB INC., ICOBOX, ALEX | ) |
| MOSKOVSKY, DARIA GENERALOVA, | ) |
| ANAR BABAYEV, NICKOLAY EVDOKIMOV, | ) |
| MICHAEL RAITSIN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## MOTION FOR AN ORDER OF ATTACHMENT

October 8, 2018

Dimitry Joffe (DJ6498)
JOFFE LAW P.C.
765 Amsterdam Avenue, 2C
New York, NY 10025
917-929-1964
dimitry@joffe.law
*Plaintiffs' counsel*

**<u>TABLE OF CONTENTS</u>**

Table of Authorities………………………………………………………………………....ii

Preliminary Statement……………………………………………………………………..1

Factual Summary…………………………………………………………………………...2

Legal Argument…………………………………………………………………………....4

    I.     Plaintiffs have satisfied the *prima facie*
          requirements for attachment under New York law……........................................4

         A.    Plaintiffs have stated causes of action for a money judgment
              and demonstrated a probability of success on the merits...…………….......6

         B.    CPLR 6201(1) and (3) provide independent applicable
              grounds for attachment of Defendants' assets here………………………8

    II.    Plaintiffs should be permitted to attach any
          funds, monies, and/or properties of Defendants…………………………………11

Conclusion………………………………………………………………………………12

**TABLE OF AUTHORITIES**

<u>Cases</u>

<u>Allstate Insurance Company v. TMR Medibill Inc.</u>, 00 Civ. 0002, 2000 WL 34011895
(E.D.N.Y. July 13, 2000)……………………………………………………………6

<u>Ally Bank v. Reimer</u>, 09 Civ 2795, 2010 WL 446025 (E.D.N.Y. Jan. 29, 2010)……………..6

<u>In re Amaranth Natural Gas Commodities Litig.</u>, 711 F. Supp. 2d 301 (S.D.N.Y. 2010)……….12

<u>BFP v. Resolution Trust Corp.</u>, 511 U.S. 531 (1994)…………………………………………....10

<u>Coley v. Vanguard Urban Improvement Ass'n</u>, 12-CV-5565, 2016 WL 7217641
(E.D.N.Y. Dec. 13, 2016)………………………………………………………………..10

<u>DLJ Mortg. Capital, Inc. v. Kontogiannis</u>, 594 F. Supp. 2d 308 (S.D.N.Y. 2009)……………...10

<u>Garden City Irrigation, Inc., v. Salamanca</u>, 801 N.Y.S.2d 234 (table), 2005 WL 927001
(N.Y. Sup. Ct. 2005)……………………………………………………………...………12

<u>JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Serv., Inc.</u>,
306 F. Supp. 2d 482 (S.D.N.Y. 2004)……………………………………………………….8

<u>In re Kaiser</u>, 722 F.2d 1574 (2d Cir. 1983)……………………………………..……………..10

<u>Lippe v. Bairnco Corp.</u>, 249 F. Supp. 2d 357 (S.D.N.Y. 2003)………………………………10

<u>Nanjing Textiles IMP/EXP Corp. v. NCC Sportswear Corp.</u>, 06 Civ. 52, 2006 WL 2337186
(S.D.N.Y. Aug. 11, 2006) ………………………………………………………………...5

<u>New York Dist. Council of Carpenters Pension Fund v. KW Const., Inc.</u>, 07 Civ. 8008,
2008 WL 2115225 (S.D.N.Y. May 16, 2008)……………………….………………5, 10, 11

<u>Prabis v. Bukhara Indian Cuisine, Inc.</u>, No. 7-CV-3704, Slip Op. (S.D.N.Y. May 17,
2018)………………………………………………………………………………..10

<u>OSRecovery, Inc. v. One Groupe Int'l, Inc.</u>, 305 F. Supp. 2d 340 (S.D.N.Y. 2004)…………..12

<u>Silverman v. Miranda</u>, 116 F. Supp. 3d 289 (S.D.N.Y. 2015)……………………………5

<u>VNB New York, LLC v. Rapaport</u>, 2016 WL 365766 (N.Y. Sup. Ct. Jan. 29, 2016)…………..9

**<u>Other authorities</u>**

F.R.C.P. 64…………………………………………………………………………...1, 4

CPLR 6201………………………………………………………………1, 5, 8, 9, 10

CPLR 6212……………………………………………………………………1, 5, 12

Plaintiffs, through their undersigned counsel, respectfully move this Court pursuant to Rule 64 of the Federal Rules of Civil Procedure and Rules 6201(1), 6201(3) and 6212 of the New York Civil Practice Law and Rules ("CPLR") for an order of attachment preventing Defendants from dissipating, removing and/or secreting their assets outside the United States to frustrate the enforcement of a judgment that might be rendered in Plaintiffs' favor.

## PRELIMINARY STATEMENT

Rule 64 allows this Court to grant a remedy of attachment available under New York state law, which provides applicable remedies under CPLR 6201. In particular, Plaintiffs respectfully seek attachment of Defendants' U.S.-based assets pursuant to CPLR 6201(1) because six of the seven Defendants in this action – five Russian citizens and a Cayman Island company -- are each "a nondomiciliary residing without the state, or . . . a foreign corporation not qualified to do business in the state" within the meaning of that provision.

Plaintiffs also seek attachment pursuant to CPLR 6201(3), which authorizes this remedy when "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." Here, Defendant ICOBOX HUB Inc. -- Plaintiff Morozov's former employer and the contractual counterparty -- is now "*in dissolution due to force majeure reasons*," according to Defendants, who have expressly admitted their intent to use that "dissolution" to void their agreements with Plaintiffs and avoid paying Plaintiffs their contractual damages. See Answer, Third Affirmative Defense (claiming that the dissolution renders the contracts "void by operation of law . . . granting the Answering Defendants the defense of impossibility of performance") (ECF No. 29 at 11).

## FACTUAL BACKGROUND

In late 2017, Plaintiff Morozov had entered into a 3-year agreement with Defendant ICOBOX HUB Inc. to serve as its CEO. That agreement was documented in two main contracts – an Employment Agreement between Defendant ICOBOX HUB Inc. and Plaintiff Morozov, and a Services Agreement between Defendant ICOBOX HUB Inc. and Plaintiff MEM Consulting Inc., Plaintiff Morozov's financial consulting company (as well as an ancillary Indemnification Agreement between ICOBOX HUB Inc. and Plaintiff Morozov). See accompanying affidavit of Plaintiff Eugene Morozov sworn to on October 9, 2018 (the "Morozov Aff."), Exhibit A (Employment Agreement), Exhibit B (Services Agreement).

Pursuant to the parties' agreement, Plaintiff commenced his employment with Defendant ICOBOX HUB Inc. on January 1, 2018, and quickly discovered that the company's Russian owners were conducting the company's business in violation of numerous U.S. laws, including employment, immigration, tax and sanctions laws. Plaintiff reported these violations up the chain and sought to correct them when he was abruptly terminated by Defendants from his position as the CEO in February 2018, in breach of the agreement.

On April 18, 2018, Plaintiffs commenced this action (the "Action") against ICOBOX HUB Inc., its parent Cayman Island company ICOBOX, and its directors and main shareholders the Individual Defendants, seeking to recover (a) damages for breach of contracts; (b) unpaid wages under the FLSA and NY labor laws; (c) damages for retaliatory discharge under the FLSA and NY labor laws; and (d) statutory liquidated damages and statutory and contractual attorneys' fees. On June 26, 2018, Plaintiffs filed their operative first amended complaint, ECF No. 24.

Defendants did not move to dismiss any of Plaintiffs' claims either in the original or the amended complaint, instead filing their answer with affirmative defenses on July 10, 2018, and

an amended answer with affirmative defenses on October 3, 2018 (ECF No. 29). Defendants did not allege any counterclaims against Plaintiffs.

Plaintiffs are very concerned that Defendants, who are, all but one, non-domiciliaries residing outside the State of New York, have dissipated, removed and/or secreted their assets or are about to do so with intent to frustrate the enforcement of a judgment that might be rendered in Plaintiffs' favor. The grounds for Plaintiffs' concerns about Defendants' asset dissipation, set out in the Morozov Affidavit are as follows.

*First*, after Plaintiffs' requests to waive service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure mailed to Defendant ICOBOX HUB Inc.'s headquarters in San Francisco, CA had been returned undelivered, Plaintiff Morozov personally visited ICOBOX HUB Inc.'s offices on April 30, 2018 – barely two weeks after the Action had commenced -- and was informed by the building management that the Company had abruptly moved out without leaving any forwarding address or contact information. Morozov Aff. ¶¶ 10-11.

*Second*, on April 12, 2018, Plaintiff Morozov was informed by Defendant ICOBOX's client Naveen Singha that ICOBOX might have closed its U.S. operations. See Morozov Aff. ¶ 13 & Exh. G. Plaintiff Morozov was also informed by Alexa Lopez, an assistant to Defendant Edvokimov, that she was no longer associated with ICOBOX and had relocated from California to Ukraine. See Morozov Aff. ¶ 12.

*Third*, Defendants themselves state in their answer that "the entity entering into the contracts [Defendant ICOBOX HUB Inc.] ***is in dissolution due to force majeure reasons, granting the Answering Defendants the defense of impossibility of performance***." ECF No. 29 at 11 (emphasis added throughout). Defendants expressly admitted in their answer their intent to use the dissolution of ICOBOX HUB Inc. to void the contracts and avoid paying Plaintiffs their

3

contractual damages, see id. (claiming that the dissolution renders the contract "void by operation of law").

*Finally*, Defendants are in the business of "initial coin offerings" and conduct their business operations in cryptocurrencies such as Bitcoin and Ether, which are highly liquid assets liable to be removed from the U.S. instantaneously before any judgment in this action is rendered or enforced, which would leave Plaintiffs without any meaningful remedy if the judgment is rendered in their favor.

Defendants' hasty and clandestine actions – the abrupt abandonment of their San Francisco headquarters; the purported "dissolution [of ICOBOX HUB Inc.] due to force majeure reasons," Defendants' professed intent to use this dissolution to avoid their contractual obligations to Plaintiffs; and Defendants' reportedly moving their business operations and personnel out of the U.S. – were all undertaken around the time this Action commenced. These "objective facts" demonstrate that Defendants, had dissipated, secreted or removed their assets out of the reach of the U.S. courts or are about to do any of those acts "to frustrate the enforcement of a judgment that might be rendered in plaintiff's favor" for purposes of CPLR 6201(3).

## **LEGAL ARGUMENT**

### I.    **Plaintiffs have satisfied the *prima facie* requirements for attachment under New York law.**

Rule 64(a) of the Federal Rules of Civil Procedure provides: "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies."

CPLR 6201 provides the following grounds for attachment relevant here:

> An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:
>
> 1. the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state; or
>    . . .
> 2. the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts . . . .

Under New York law, a plaintiff may obtain a pre-judgment order of attachment upon showing that: (1) the plaintiff has stated a cause of action for a money judgment; (2) the plaintiff has a probability of success on the merits; (3) the defendant is either "a nondomiciliary residing without the state," or "with the intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered, or secreted property, or removed it from the state or is about to do any of these acts," and (4) the amount demanded from the defendant exceeds all counterclaims known to the plaintiff. See CPLR 6212(a), 6201(1), 6201(3); see also Silverman v. Miranda, 116 F. Supp. 3d 289, 310 (S.D.N.Y. 2015); New York Dist. Council of Carpenters Pension Fund v. KW Const., Inc., 07 Civ. 8008 (RJS), 2008 WL 2115225 at *1 (S.D.N.Y. May 16, 2008); Nanjing Textiles IMP/EXP Corp. v. NCC Sportswear Corp., 06 Civ. 52 (JGK), 2006 WL 2337186 at *4-*5 (S.D.N.Y. Aug. 11, 2006). As demonstrated below, Plaintiffs have satisfied all the requisite elements for an order of attachment under New York law.

**A.      Plaintiffs have stated causes of action for a money judgment**
**and demonstrated a probability of success on the merits.**

*First*, it is undisputed that Plaintiffs' Complaint sets out their contractual and statutory

claims for a money judgment. See Ally Bank v. Reimer, 2010 WL 446025, *3 (E.D.N.Y. Jan. 29,

2010) ("The standard for determining whether a cause of action exists for purposes of attachment

under New York law is a liberal one. Unless the plaintiff's papers clearly establish that the plaintiff

must ultimately be defeated, a cause of action exists.") (citation omitted).

*Second*, in considering the likelihood of success on the merits, the court "must give the

plaintiff the benefit of all the legitimate inferences that can be drawn from the facts." Allstate

Insurance Company v. TMR Medibill Inc., No. CV–00–0002, 2000 WL 34011895, *14

(E.D.N.Y. July 13, 2000). Plaintiffs are likely to succeed on the merits of their claims or at the

very least some of them, based on the facts alleged in the complaint, the documentary evidence

supporting them, and "the legitimate inferences that can be drawn from the facts." Notably, none

of the Defendants in this Action have moved to dismiss any of the six counts of the Complaint

for failure to state a claim. Moreover, in their answer to the Complaint, Defendants admitted that

Plaintiffs had entered into the Employment and Services agreements with Defendant ICOBOX

HUB Inc., and that Plaintiff Morozov served as the CEO of Defendant ICOBOX HUB Inc. See

Amended Answer, ECF No. 29 ¶¶ 11, 14, 57, 59.

Moreover, the relevant contracts on their faces establish with reasonable certainty

Defendant ICOBOX HUB Inc.'s liability for breach of contract damages. The Employment

Agreement between Defendant ICOBOX HUB and Plaintiff Morozov provides that during that

initial 3-year term, the Company can terminate Plaintiff Morozov only "if the Company

determines, in its sole discretion, that Employee is not fully performing his duties." Morozov

Aff. Exh. A ¶ 4. There was never any such determination by Defendants that Plaintiff Morozov

was not fully performing his duties: the Complaint alleges that Plaintiff was terminated for trying

to carry out his duties in a legal manner and for reporting numerous violations up-the-chain.

Accordingly, Defendants' termination of Plaintiff Morozov's employment during the initial

three-year term of the Employment Agreement constitutes a material breach of that Agreement,

excusing Plaintiff Morozov's further performance under the Agreement and entitling him to his

contractual damages.

The Services Agreement between Defendant ICOBOX HUB Inc. and Plaintiff MEM

Consulting Inc., too, is unequivocal that "[i]n the event of termination by Client [ICOBOX HUB

Inc.] prior to the end of the Term, for any reason whatsoever, Company [Plaintiff MEM

Consulting Inc.] shall be compensated for the Services performed through the date of termination

in the amount of a prorated portion of the fees due and Client shall pay all expenses, fees, out of

pocket and any additional costs incurred through and up to the date of cancellation. . . . In

addition, Client shall pay Company an additional Eighty One Thousand Six Hundred Sixty Eight

Dollars ($81,668) as a cancellation fee ('Cancellation Fee')." Morozov Aff. Exh. B ¶ 5. As

alleged in the Complaint, however, Defendant ICOBOX HUB terminated the Services

Agreement without paying any prorated portion of Plaintiff MEM Consulting Inc.'s contractual

fee, or any part of the contractual Cancellation Fee, entitling Plaintiff MEM Consulting Inc. to its

prorated fees and the Cancellation Fee as contractual damages under the Agreement. Both the

Employment and the Services Agreements also provide for attorney's fees and costs to be

awarded to the prevailing party. See Morozov Aff. Exh. A ¶ 6.8, Exh. B ¶ 12.

With respect to the FLSA and NYLL claims for unpaid/delayed wages, the Complaint

sets out a schedule of such unpaid or delayed wages (ECF No. 24 ¶ 83) and the applicable

federal and state statutory provisions for the recovery of damages for such wage law violations,

including liquidated damages and attorneys' fees and costs. Defendants' affirmative defenses to these claims, such as that "Plaintiff Morozov is an independent contractor not subject to the FLSA" (ECF No. 29 at p. 11), are contradicted by the "Employment Agreement" itself, which manifestly defines the relationship between the parties as that of employer-employee, and refers to Plaintiff Morozov consistently as the "Employee" subject to normal "employment" duties and "reporting" requirements. See Morozov Aff. Exh. A.

With respect to the FLSA and NYLL retaliation claims, the Complaint likewise provides many examples of Plaintiff Morozov's documented complaints about serious violations and his termination immediately thereafter, retaliation being at the very least a contributing factor (if not the prime reason) for his termination, entitling him to recovery of statutory damages and attorneys' fees and costs for retaliatory discharge.

*Third*, the amount demanded by Plaintiffs from Defendants is greater than the amount of all counterclaims known to Plaintiffs because Defendants' Answer (ECF No. 29) sets forth no counterclaims. See JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. and Trade Serv., Inc., 306 F.Supp.2d 482, 485 (S.D.N.Y. 2004) ("Because the defendants have not set forth any counterclaims in the papers before the Court, the amount demanded from the defendants exceeds the amount of all counterclaims known to the plaintiff.").

**B.    CPLR 6201(1) and (3) provide independent grounds for attachment.**

Under CPLR 6201(1), an order of attachment may be granted when "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." Here, the individual defendants are all citizens of the Russian Federation and are "nondomiciliary[ies] residing without the state." Defendant ICOBOX is a Cayman corporation without any license to do business in New York, and as such "a foreign corporation not qualified

to do business in New York." <u>See</u> Morozov Aff. ¶ 19. Accordingly, an order of attachment may be ordered against these Defendants' assets to prevent their dissipation, removal and/or secreting under CPLR 6201(1).

Attachment may also be ordered under CPLR 6201(3) when "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." Here, Defendants, shortly after this Action had commenced, (a) abandoned their San Francisco headquarters, leaving no forwarding information; (b) put Defendant ICOBOX HUB Inc., the only U.S. entity among them, in "dissolution" purportedly for "force majeure reasons," and (c) reportedly have been moving their operations and personnel out of the U.S. <u>See</u> Morozov Aff. ¶¶ 10--15. At the same time, Defendants have been reportedly making millions of dollars in initial coin offerings and other dealings elsewhere. <u>See</u> Morozov Affidavit ¶¶16-18.

Moreover, Defendants themselves assert in their answer that the "dissolution" of ICOBOX HUB Inc. has rendered its contracts with Plaintiffs "void by operation of law . . . granting the Answering Defendants the defense of impossibility of performance." ECF No. 29 at p. 11. Plaintiffs disagree with this assertion, but for present purposes Defendants' admission of their intent to dissolve the contracting party, void the contracts and avoid paying Plaintiffs their contractual damages clearly shows an intent to defraud under CPLR 6201(3). <u>See</u> <u>VNB New York, LLC v. Rapaport</u>, 2016 WL 365766 at *5 (N.Y. Sup. Ct. Jan. 29, 2016) (admissions from defendants that they transferred property to avoid creditors, combined with several "badges of fraud," warranted an order of attachment).

Such actions have been recognized by the courts as "objective facts" or "badges of fraud" satisfying the "intent" element of CPLR 6201(3), see, e.g., Prabis v. Bukhara Indian Cuisine, Inc., No. 7-CV-3704, Slip Op. (S.D.N.Y. May 17, 2018) ("[I]t is telling that defendants put the restaurant up for sale just one month after the commencement of plaintiffs' lawsuit."); Coley v. Vanguard Urban Improvement Ass'n, No. 12-CV-5565, 2016 WL 7217641 at *9 (E.D.N.Y. Dec. 13, 2016) (defendant's sale of property three weeks after being served supports inference of fraudulent intent); DLJ Mortg. Capital, Inc. v. Kontogiannis, 594 F. Supp. 2d 308, 325 (S.D.N.Y. 2009) (defendants' sale of properties within three months of plaintiff's filing suit supports inference of fraudulent intent); New York Dist. Council of Carpenters Pension Fund v. KW Const., Inc., 07-CV-8008, 2008 WL 2115225 at *7 (S.D.N.Y. May 16, 2008) (inference of fraudulent intent shown where defendants offered a property for sale "shortly before or after the commencement of [the] action").

The courts also consider whether the challenged transaction was conducted in a clandestine manner, and whether the transaction was made in the ordinary course of business. See Carpenters Pension Fund, 2008 WL 2115225 at *4 ("Because '[f]raudulent intent is rarely susceptible to direct proof,' In re Kaiser, 722 F.2d 1574, 1582 (2d Cir. 1983), plaintiffs often seek to prove intent to defraud circumstantially by proof of certain 'objective facts' – 'badges of fraud' -- that give rise to an inference of intent to defraud. See BFP v. Resolution Trust Corp., 511 U.S. 531, 540-41 (1994). The court in Carpenters Pension Fund, 2008 WL 2115225 at *4-5, cited Lippe v. Bairnco Corp., 249 F. Supp. 2d 357, 374-75 (S.D.N.Y. 2003), for the following "badges of fraud": (1) gross inadequacy of consideration; (2) a close relationship between transferor and transferee; (3) the transferor's insolvency as a result of the conveyance;

(4) a questionable transfer not in the ordinary course of business; (5) secrecy in the transfer; and (6) retention of control of the property by the transferor after the conveyance.

Here, Defendants took these actions to dissipate, remove and/or secret their assets abruptly and promptly after the commencement of this Action; they took them not in the regular course of business but in haste and purportedly for "force majeure" reasons. These "objective facts" of Defendants' intent to hide their assets to sabotage Plaintiffs' recovery in the likely event of a favorable judgment justify an order of attachment pursuant to CPLR 6201(3). See New York Dist. Council of Carpenters Pension Fund v. KW Const., Inc., 2008 WL 2115225 at *4 ("a questionable transfer not in the ordinary course of business" and "secrecy in the transfer" are considered "badges of fraud").

## II.     Plaintiffs should be permitted to attach any
## funds, monies, and/or properties of Defendants.

In Carpenters Pension Fund, the court declined to resolve a dispute as to what properties the defendants actually owned and issued an order permitting plaintiffs to attach any "funds, monies, personal or real property and/or interest in property" of defendants. 2008 WL 2115225 at *6 n.3. Plaintiff Morozov's affidavit attaches a schedule of the known assets of Defendants, including bank accounts, real estate interests, and shares of corporate stock that could be properly subject to attachment. Morozov Aff. Exh. I. Plaintiffs respectfully submit, however, that the Court ought to permit Plaintiffs to attach any funds, monies, personal or real property and/or interest in property of Defendants up to $2 million demanded by Plaintiffs in the Complaint, and leave any disputes as to the scope and implementation of the attachment order to the procedures prescribed in CPLR 6219-6224, as in Carpenters Pension Fund.

Finally, on a motion for an order of attachment, plaintiffs are required to give an undertaking "in a total amount fixed by the court, but not less than five hundred dollars." CPLR

6212(b). Here, Plaintiffs respectfully suggest an undertaking of no more than $1000 for attachment of up to $2,000,000 in assets, or .05% of the assets. The amount of the undertaking requested, when calculated as a percentage of assets, is similar to those in other attachment cases. See, e.g., OSRecovery, Inc. v. One Groupe Int'l, Inc., 305 F. Supp. 2d 340, 348 (S.D.N.Y. 2004) (undertaking of $100,000 on assets of 250,000,000 [.04%]); In re Amaranth Natural Gas Commodities Litig., 711 F. Supp. 2d 301, 313 (S.D.N.Y. 2010) (undertaking of $250,000 on assets of $72.4 million [.35% of the assets]); Garden City Irrigation, Inc., v. Salamanca, 801 N.Y.S.2d 234 (table), 2005 WL 927001, *3 (N.Y. Sup. Ct. 2005) (undertaking of $500 where plaintiff sought to recover $150,000 [.33%]).

Defendants here abruptly terminated Plaintiff's employment as the CEO without paying or offering to pay any contractual cancellation fees, any contract damages, or any severance – instead, they threw him out on the street in an unfamiliar city to which he had just relocated for his new employment while withholding his due wages and failing to reimburse his expenses of relocating from New York to San Francisco for the job in the first place. Defendants' actions have put Plaintiffs under an enormous financial strain (and unable to find employment since his termination, see Morozov Affidavit ¶ 20). Plaintiffs respectfully ask the Court to consider these facts in determining the amount of the undertaking.

## CONCLUSION

Plaintiffs have demonstrated all the necessary elements for an order of attachment. Accordingly, Plaintiffs should be granted an order permitting them to attach any funds, monies, personal or real property and/or interest in property of Defendants located in the United States.

October 8, 2018                                        Respectfully Submitted,

_____

Dimitry Joffe (DJ6498)
JOFFE LAW P.C.
765 Amsterdam Avenue, 2C
New York, NY 10025
917-929-1964
dimitry@joffe.law
*Counsel to Plaintiffs*

13

## CERTIFICATE OF SERVICE

I, Dimitry Joffe, counsel to Plaintiffs in this Action, hereby certify that on this 8th day of October 2018, I caused a copy of Plaintiffs' memorandum or law and Plaintiff Morozov's affidavit with exhibits thereto in support of Plaintiffs' motion for attachment to be served electronically on the registered participants in this case by ECF.


s/ Dimitry Joffe

Dimitry Joffe (DJ6498)
JOFFE LAW P.C.
*Counsel for Plaintiff*

October 8, 2018