## THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| EUGENE MOROZOV and MEM CONSULTING INC., | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) NO. <u>1:18-cv-03421-GBD-SLC</u> |
| | ) |
| ICOBOX HUB INC., ICOBOX, ALEX MOSKOVSKY, and NICKOLAY EVDOKIMOV, | ) |
| | **)** |
| Defendants. | ) |

---

### PLAINTIFFS' PROPOSED FINDINGS OF FACT
### AND CONCLUSIONS OF LAW CONCERING DAMAGES

Plaintiffs, through their undersigned counsel, respectfully submit their proposed findings of fact and conclusions of law with respect to their damages and attorneys' fees and costs.

### BACKGROUND

1.     On August 30, 2019, after the conclusion of discovery, Plaintiffs moved for a partial summary judgment on their breach of contract claims (Counts I and II of their first amended complaint, ECF No. 24), seeking to hold Defendant Nickolay Evdokimov personally liable for their contractual damages as an alter ego of his defunct company Defendant ICOBOX HUB Inc. (the "Company"). ECF No. 66.

2.     Defendants' having failed to respond, the Court on September 27, 2019 issued an order granting Plaintiffs' motion against Defendant Nickolay Evdokimov. ECF No. 69. The Court also referred the matter to the Magistrate Judge for an inquest on damages and attorneys' fees and costs. <u>Id.</u>

3.      On October 22, 2019, the Magistrate Judge entered an order directing Plaintiffs to submit their proposed findings of fact and conclusions of law concerning damages by no later than Friday, November 22, 2019. ECF No. 74.

4.      The order also directed Plaintiffs' counsel to serve a copy of the order on Defendants and to file proof of such service on the docket by October 25, 2019. Id.

5.      Plaintiffs' counsel served the Order upon Defendants and filed proof of such service on October 22, 2019. ECF No. 76.

6.      Accordingly, Plaintiffs respectfully submit the following proposed findings of fact and conclusions of law concerning their damages.

## FINDINGS OF FACT

**A.      Plaintiff Morozov's damages for breach of the Employment Agreement**

7.      As damages for breach of the Employment Agreement, Plaintiff Morozov seeks to recover the amount of salary and benefits he would have been paid during the remainder of the contract term, reduced by any income that he has earned, will earn, or could with reasonable diligence earn during that period.

8.      The Employment Agreement between Plaintiff Morozov and the Company provides that "the initial term of Employee's employment with Company will be from the date of execution of this Agreement through December 31, 2020." Affidavit of Eugene Morozov sworn to on November 22, 2019 ("Morozov Aff.") Exh. A, ¶ 4.1.

9.      The Employment Agreement was executed and became effective on January 1, 2018 (id. ¶ 1.1); therefore, its initial term was for three years.

10.      The Employment Agreement provides that "[d]uring the Initial Term, Company may terminate its employment relationship with Employee with thirty (30) days' written notice if

the Company determines, in its sole discretion, that Employee is not fully performing his duties." ¶ 4.2.1.

11.      The Employment Agreement was terminated on February 9, 2018. Morozov Aff. ¶ 4. The Agreement was terminated in breach of its provisions because there was no determination by the Company that Plaintiff Morozov was "not fully performing his duties," which is the sole cause for termination during the Initial Term provided for in the Agreement. Id.

12.      The wrongful termination of the Employment Agreement entitles Plaintiff Morozov to the benefit-of-the-bargain measure of contractual damages in the amount he would have been paid in salary and benefits during the remainder of the 3-year initial term had the Agreement not been breached, less any income that he has earned or could earn with reasonable diligence during the unexpired term, as set forth below.

13.      The Employment Agreement provides for "an annual Base Salary in the amount of Eighty Thousand Dollars ($80,000)," for the total amount of $240,000 during the initial three-year term. Morozov Aff. Exh. A, ¶ 3.1.

14.      In the course of his employment, Plaintiff Morozov was only paid his one-month salary in the amount of $6,666. Morozov Aff. ¶ 6. Accordingly, Plaintiff Morozov would have been paid $233,334 in salary during the remainder of the 3-year term.

15.      The Employment Agreement also entitles Plaintiff Morozov to "an annual bonus equal to Six Percent (6%) of Company's EBITDA." Id. ¶ 3.2. Because the Company did not earn any income, Plaintiff Morozov does not seek any unpaid bonus amount as his damages.

16.      The Employment Agreement also provides that "Employee shall receive equity compensation in the amount of Six Percent (6%) vested on a prorated monthly basis over a period of three (3) years and subject to separate agreement attached as an exhibit hereto." Id. ¶

3.3. Because the Company has no equity, Plaintiff Morozov does not seek any equity compensation amount as his damages.

17.     The Employment Agreement also provides that "Company will reimburse Employee for expenses in accordance with Company's Travel and Business Expense Policy attached hereto as Exhibit 'C.'" Id. ¶ 3.4. Plaintiff Morozov incurred $3,478 in unpaid travel and business expenses in the regular course of business in pursuit of his employment duties, and seeks to recover that amount as part of his damages. Morozov Aff. ¶ 12.

18.     The Employment Agreement also provides that "Employee shall in addition receive the following benefits: Social Security, disability, healthcare pension benefits, life insurance and paid time off per calendar year. Company shall pay 100% of medical, dental, vision, and life insurance for CEO in accordance with its healthcare policy." Morozov Aff. Exh. A, ¶ 3.5.

19.     Plaintiff Morozov had not received any of the benefits due under paragraph 3.5 of the Agreement, and seeks the monetary value of those benefits estimated at $2,000 per month based on the market price for comparable benefits, for the total amount of $72,000 for the 3-year term as part of his damages. Morozov Aff. ¶ 14.

20.     Evdokimov terminated Plaintiff Morozov with no prior warning, having just relocated him and his wife from New York to San Francisco to head his brand new crypto-venture ICOBOX HUB Inc., and left Morozov with an unpaid salary, no income or severance, with no insurance, and with a trail of breached contractual commitments signed by Morozov on behalf of the Company whose alter ego Evdokimov had no intention of honoring, and the resulting significant damage to Morozov's professional standing (he is a CPA), business reputation, and career prospects. Morozov could not find a permanent position since termination,

could not afford health insurance, suffered a heart attack and underwent an open-heart surgery in August 2018, half a year since the termination, incurring $83,900 in medical bills, still unpaid. Morozov Aff. ¶ 14 & Exh. I.

21.     The Employment Agreement also provides that "[f]ollowing execution of this Agreement, Company shall pay CEO a one time of Ten Thousand Dollars ($10,000) for purposes of relocation assistance." Morozov Aff. Exh. A, ¶ 3.8. Plaintiff Morozov relocated from New York to San Francisco in January 2018 for purposes of his employment with the Company, and incurred at least $10,000 in relocation expenses, which were not paid by the Company. Plaintiff Morozov seeks to recover this amount as part of his damages. Morozov Aff. ¶ 11.

22.     Following his termination, Plaintiff Morozov diligently sought another employment, sending out hundreds of resumes and going to dozens of interviews, but was unable to secure a full-time position despite his strenuous efforts, taking a series of part-time, temporary jobs instead. Morozov Aff. ¶ 7.

23.     In the first year and a half since his termination in February 2018, Plaintiff Morozov earned $53,600. Morozov Aff. ¶ 8. Plaintiff Morozov has no pending or anticipated offers of full-time employment, and is reasonably expected to earning approximately the same amount for the remaining year and a half of the three-year term. Morozov Aff. ¶ 9.

24.     Accordingly, his contractual damages should be reduced by the amount of $107,200 that he has earned and is reasonably expected to earn during the remainder of the term.

25.     In sum, Plaintiff Morozov seeks to recover the following damages for breach of the Employment Agreement: the full amount of salary and benefits he would have received under the Agreement during the remainder of the three-year term equal to $318,812, less the

$107,200 he has earned and could with reasonable diligence earn during the unexpired term, for the total amount of $211,612.

      **B.**    **Plaintiff MEM's damages for breach of the Services Agreement**

26.    As damages for breach of the Services Agreement, Plaintiff MEM seeks to recover the prorated portion of its fees through the termination date, including a 30-day notice period, and the Cancellation Fee as provided for in the Services Agreement.

27.    The Services Agreement between Plaintiff MEM and the Company (defined as the "Client" therein) provides that it "shall commence on January 1, 2018 and shall remain effective through December 31, 2020 (the 'Term')." Morozov Aff. Exh. B, ¶ 3.

28.    The Services Agreement further provides that "[i]n consideration of the Services, Client shall pay to [MEM] as follows: Monthly payment of $20,417 (Twenty Thousand Four Hundred Seventeen Dollars) payable in equal installments twice a month." Id. ¶ 2.

29.    The Services Agreement further provides that it "may be terminated by Client upon thirty (30) days' prior written notice to [MEM]." Id. ¶ 4.1.

30.    The Services Agreement further provides that "[i]n the event of termination by Client prior to the end of the Term, for any reason whatsoever, [MEM] shall be compensated for the Services performed through the date of termination in the amount of a prorated portion of the fees due and Client shall pay all expenses, fees, out of pocket and any additional costs incurred through and up to the date of cancellation." Id. ¶ 5.1. The Services Agreement was terminated on February 9, 2018 without the required 30-day notice period. Morozov Aff. ¶ 5.

31.    The Services Agreement further provides that in the event of termination prior to the end of the three-year term, "Client shall pay [MEM] an additional Eighty One Thousand Six Hundred Sixty Eight Dollars ($81,668) as a cancellation fee ('Cancellation Fee'). It is expressly

understood and agreed by the parties that the Cancellation Fee is fair and reasonable under the circumstances as Company is committing significant efforts and resources to Client for the duration of the Term. The parties intend that that the Cancellation Fee would serve to compensate Company for its commitment to Client as well as any damages incurred under this Section 5(a) and do not intend for it [to] serve as a penalty." Morozov Aff. Exh. B ¶ 5.

32.     Prior to the Company's termination of the Services Agreement, Plaintiff MEM received one monthly payment from the Company in the amount of $20,417 for the services performed in January 2018. Morozov Aff. ¶ 6.

33.     The Company wrongfully terminated the Services Agreement on February 9, 2019 without the required 30-day notice and without paying Plaintiff MEM (a) its prorated fee through the date of termination, and (b) the Cancellation Fee due under the Agreement in the event of termination prior to the expiration of its term. Morozov Aff. ¶ 5.

34.     For purposes of calculating the "prorated fee through the date of termination," Plaintiff MEM counts its unpaid fee for February 1 through February 9 (the date of termination), and its fee for the 30-day notice period, for the total of 39 days. Based on the monthly fee of $20,417, the prorated fee for the 39-day period amounts to $26,542.

35.     In sum, Plaintiff MEM seeks to recover as damages its prorated fee of $26,542 plus its Cancellation Fee of $81,668, for the total amount of $108,210.

**C.     Plaintiffs' attorneys' fees and costs**

36.     The Employment Agreement provides that "[i]n the event of a dispute arising out of the interpretation or enforcement of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and costs." Morozov Aff. Exh. A, ¶ 6.8.

37.     The Services Agreement provides that "[i]n the event of legal action arising from or out of this Agreement or the relationship of the parties created hereby, the trier thereof may award to any party any reasonable attorneys' fees and other costs incurred in connection therewith." Morozov Aff. Exh. B, ¶ 12.

38.     Plaintiffs Morozov and MEM were jointly represented by a single counsel in this action. Plaintiffs' agreement with their counsel provides for a contingency fee equal to 30% (thirty percent) of any recovery in lieu of the hourly fees. Morozov Aff. ¶ 15.

39.     Counsel's contingency fee calculated as 30% of the amount of damages recoverable by Plaintiffs Morozov and MEM would be $95,946.

40.     Plaintiffs are also entitled to their costs actually incurred in pursuit of this action. Such allowable costs include (a) the case filing fee of $400; (b) the costs of depositions of Defendant Evdokimov (including translator's fee) and of a third party, Victoria Pirumova, both depositions used by Plaintiffs in their summary judgment motion, for the total amount of $5474; and (c) the expenses of Plaintiffs' counsel in taking Defendant Evdokimov's deposition in Los Angeles (air fare and hotel charges) in the amount of $941. Morozov Aff. ¶¶ 16-19.

41.     In sum, Plaintiffs seek to recover $95,946 in attorneys' fees and $6,815 in costs.

### CONCLUSIONS OF LAW

**A.     Plaintiff Morozov's damages under the Employment Agreement**

42.     The Employment Agreement is governed by New York law. Morozov Aff. Exh. A ¶ 6.7. The damages that Plaintiff Morozov seeks to recover in the amount of salary and benefits he would have been paid during the remainder of the contract term are permitted by New York law in actions for breach of employment agreements.

43.     Under New York law, "a plaintiff alleging breach of contract is entitled to damages restoring the full benefit of the bargain." Kumiva Group, LLC v. Garda USA Inc., 2017 NY Slip Op. 00235 (1st Dep't Jan. 2, 2017). In particular, "[t]he damages an employee is entitled to recover for breach of an employment agreement is the amount of wages and other benefits he/she would have received under the contract (see Wiener v. Lawrence-Picaso, Inc., 295 A.D.2d 273, 274, lv denied 99 N.Y.2d 504; Rebh v. Lake George Ventures, Inc., 241 A.D.2d 801, 803; see also 52 N.Y. Jur2d, Employment Relations, § 249, pp 442-443)." Siegel v. Laric Entertainment Corp., 307 A.D.2d 861, 862 (1st Dep't 2003) (reversing damages award where the jury "only awarded plaintiff compensation for wages owed him for the period prior to his termination, but neglected to include damages for the unexpired part of the minimum one-year term of the contract"); see also Tendler v. Bais Knesses of New Hempstead, Inc., 977 N.Y.S.2d 747, 748 (2d Dep't 2013) ("The damages payable for breach of an employment contract are measured, prima facie, by the wages that would have been paid during the remainder of the contract term (see Cornell v T.V. Dev. Corp., 17 N.Y.2d 69, 74 [1966]; Rebh v Lake George Ventures, 241 A.D.2d 801, 803 [1997])").

44.     The recoverable amount of wages and other benefits that Plaintiff Morozov would have been paid during the remainder of the contract terms is $318,812, as shown above.

45.     This recoverable amount of wages and other benefits must be then reduced by the income that Plaintiff Morozov has earned, will earn, or could with reasonable diligence earn during the unexpired term. See Tendler, 977 N.Y.S. 2d at 748. "[T]he burden of proving a lack of diligent effort to mitigate damages is upon the defendant." Cornell, 17 N.Y.2d at 74. As shown above, that amount is $107,200.

46.     Accordingly, Plaintiff Morozov is entitled to his actual damages for breach of the Employment Agreement allowable under New York law in the amount of $211,612.

**B.     Plaintiff MEM's damages under the Services Agreement**

47.     The Services Agreement is governed by New York law. Morozov Aff. Exh. B ¶ 12.

48.     With respect to the Cancellation Fee, New York law provides that "[w]here damages flowing from a breach are difficult to ascertain, a provision fixing the damages in advance will be upheld if the amount is a reasonable measure of the anticipated probable harm." City of Rye v Public Serv. Mut. Ins. Co., 34 N.Y.2d 470, 473 (N.Y. 1974); Truck Rent-A-Ctr. v. Puritan Farms 2nd, 41 N.Y.2d 420, 424 (1977) (Liquidated damages are "an estimate, made by the parties at the time they enter into their agreement, of the extent of the injury that would be sustained as a result of breach of the agreement.").

49.     The burden is on the party seeking to avoid liquidated damages to show that the stated liquidated damages are, in fact, a penalty. P.J. Carlin Constr. Co. v. City of New York, 59 A.D.2d 847 (1st Dept. 1977); Wechsler v. Hunt Health Sys., 330 F. Supp. 2d 383, 413 (S.D.N.Y. 2004).

50.     Here, the parties had agreed that the Cancellation Fee was "fair and reasonable under the circumstances," and that "the Cancellation Fee would serve to compensate Company for its commitment to Client as well as any damages incurred under this Section 5(a) and do not intend for it [to] serve as a penalty." Morozov Aff. Exh. B ¶ 5.

51.     Furthermore, the Services Agreement entitles Plaintiff MEM to a prorated amount of its monthly fee through the date of termination. Where, as here, an agreement is terminated without the contractually required notice, New York law allows the nonbreaching party to

10

recover as damages for this breach the amount that would have been earned during the notice period.

52.     "It is settled that expectation damages 'should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 196 (2d Cir. 2003).

53.     Had the Company performed its contractual obligations and terminated the Agreement upon the required 30-day notice, Plaintiff MEM would have been entitled to its prorated fee during the 30-day period through the termination date, and can recover that amount in damages. See TNT USA Inc. v. DHL Express (Usa), Inc., 09-CV-0481(JS)(ARL), at *19-20 (E.D.N.Y. Feb. 23, 2012) ("Courts in New York and elsewhere have recognized, in keeping with general principles of expectation damages, that '[w]here a contract permits a party to terminate upon notice, and a party fails to provide the required notice, contract damages are limited to the notice period.' Millennium Aviation Servs., Inc. v. Gen. Dynamics Co., 335 F. App'x 76, 78 (2d Cir. 2009) (applying Connecticut law); see Trimed, Inc. v. Sherwood Med. Co., 977 F.2d 885, 892 (4th Cir. 1992) (applying New York law); 25 C.J.S. Damages § 110 ('Where a contract is terminable at any time on notice and it is terminated without notice, the damages which the aggrieved party may recover are limited to the notice period.')"; Lankau v. Luxoft Holding, Inc., 266 F. Supp. 3d 666, 682 (S.D.N.Y. 2017) ("Under New York law, a 'nonbreaching party may recover general damages, which are the natural and probable consequence of the breach.' Here, the Complaint alleges that Defendants provided Plaintiff with only seventeen days of notice, and that Plaintiff suffered damages from this breach. Furthermore, Defendants admit in their moving papers that Plaintiff is entitled to damages based on the remaining 73 days of the notice period.") (internal citations omitted).

54.     Accordingly, New York law allows Plaintiff MEM to recover its Cancellation Fee and its prorated fee through the date of termination, including the 30-day notice period, as damages for breach of the Services Agreement.

### C.     Attorneys' fees and costs

55.     "Under New York law, attorney's fees are recoverable only when authorized by statute or contract." Banca Della Svizzera Italiana v. Cohen, 756 F. Supp. 805, 807 (S.D.N.Y. 1991).

56.     Here, attorneys' fees are authorized by the relevant contracts: the Employment Agreement provides that the prevailing party "shall be entitled to recover reasonable attorney's fees and costs," Morozov Aff. Exh. A, ¶ 6.8; the Services Agreement provides that any party may be awarded its reasonable attorneys' fees and costs. Morozov Aff. Exh. B ¶ 12.

57.      Plaintiffs' agreement with their attorney provides for a contingency fee equal to 30% of the recovery, which is a reasonable contingency fee under New York law. New York law recognizes that contingency fee arrangements account for the risks that the lawyer would "do much work and earn nothing" by taking a case on a contingency-fee basis. Lawrence v. Miller, 11 N.Y.3d 588, 596 (2008). See, e.g., Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 403 (S.D.N.Y. 2000) ("Significantly, a one-third contingency fee is specifically provided for in the rules and regulations of New York, see 22 N.Y.C.R.R. § 603.7, Schedule B (rules of the New York Appellate Division, First and Second Departments, delineating schedule of reasonable fees in personal injury and wrongful death actions), and represents the standard fee charged by attorneys."); Lester Brickman, Contingency Fee Abuses, Ethical Mandates and the Disciplinary System: The Case Against Case-by-Case Enforcement, 53 Wash. & Lee L. Rev. 1339 (1996) (nationally, allowable contingency fees range from 33% to 50%)).

58.     In <u>Schweizer</u>, the court upheld a 33% contingency agreement even though the lawyer's efforts resulted in just a 7% increase in the settlement offer over the initial offer (made before the lawyer got involved). 93 F. Supp. 2d at 386–87, 403-04. Here, Plaintiffs' counsel had actively pursued this litigation from its very inception: conducted pre-filing settlement negotiations; drafted the original and the amended complaint; participated in the Court-ordered mediation; conducted document and deposition discovery (including taking deposition of Defendant Evdokimov in Los Angeles; taking two third-party depositions, and defending Plaintiff Morozov's deposition); negotiated two settlement agreements with other defendants; appeared at two Court conferences; and engaged in motion practice, including Plaintiffs' motions for attachment, motion for a default judgment, and a motion for a partial summary judgment. Morozov Aff. ¶ 15.

59.     Accordingly, the 30% contingency fee here is reasonable and not disproportionate to the value of the services rendered, especially in light of "the particular hurdles that the plaintiff [had to] overcome in order to get a personal judgment against Nickolay [Evdokimov] and a judgment for which he will be responsible to satisfy out of his own personal assets" as noted by the Court at the December 12, 2018 conference. ECF No. 48 p. 75.

60.     Plaintiffs also seek to recover their costs authorized by the Local Rules, in particular: (a) the docketing fee pursuant to Local Rule 54.1(c)(10); (b) the costs of depositions used in Plaintiffs' motion for summary judgment pursuant to Local Rule 54.1(c)(2); and (c) the costs of counsel's attending deposition of Defendant Evdokimov in Los Angeles pursuant to Local Rule 30.1. The total amount of costs sought by Plaintiffs is $6,815.

## **CONCLUSION**

61.     Plaintiffs' requested damages of $319,822, attorneys' fees of $95,946, and costs

of $6,815 are permissible and reasonable under New York law and should be awarded in full.

November 22, 2019                                           Respectfully Submitted,

_____
Dimitry Joffe
JOFFE LAW P.C.
765 Amsterdam Ave, 2C
New York, NY 10025
(917)-929-1964
Dimitry@joffe.law
*Plaintiffs' counsel*

**CERTIFICATE OF SERVICE**

I, Dimitry Joffe, hereby certify that on this 22nd day of November, 2019, I caused true and correct copies of Plaintiffs' Proposed Findings of Fact and Conclusions of Law, accompanied by the affidavit of Plaintiff Morozov sworn to on November 22, 2019, with exhibits thereto, to be served upon Defendants by electronic mail to Neo@icobox.io, Nick@Evdokimov.com, and Alex@moskovski.com.

/s/ Dimitry Joffe
Dimitry Joffe
JOFFE LAW P.C.
765 Amsterdam Ave, 2C
New York, NY 10025
*Plaintiffs' counsel*